# UNITED STATES DISTRICT COURT

# DISTRICT OF NEBRASKA

| | |
|---|---|
| CHRISTOPHER CORDARO, Individually, and on Behalf of All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>    v.<br><br>NELNET SERVICING, LLC,<br><br>                   Defendant. | Case No. 4:22-cv-03207<br><br>**<u>CLASS ACTION</u>**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Christopher Cordaro ("Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendant Nelnet Servicing, LLC ("Nelnet" or "Defendant") and makes the following allegations based upon knowledge as to himself and his own acts, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.      Nelnet is a student loan service company based in Lincoln, Nebraska that specializes in consumer finance, telecommunications, and K through 12 and higher education.[1] Altogether, Nelnet services 25 million customers.[2]

2.      Nelnet's Privacy Policy (the "Privacy Policy") states that "[p]rotecting your privacy is important to Nelnet and our employees…We implement reasonable and appropriate physical, procedural, and electronic safeguards to protect your information."[3]  Nelnet promises to "take[] careful steps to safeguard customer information" and to "restrict access to your personal and account information[.]"[4]

3.      Based on information and belief, as part of its core business of servicing student loans, Nelnet stores demographic information, including names, mailing addresses, email addresses, social security numbers, and system usernames and passwords.[5]

---

[1] *See* https://www.nelnet.com/welcome (last visited September 15, 2022).

[2] *See* https://nelnetinc.com (last visited September 15, 2022).

[3] *See* https://www.nelnet.com/privacy-and-security (last visited September 15, 2022).

[4] *Id.*

[5] *See* https://www.nelnet.com/faqs (last visited September 15, 2022).

4.      Nelnet touts that it "takes careful steps to safeguard information." But according to a letter Nelnet sent to the Maine Attorney General on August 26, 2022, Nelnet experienced a breach occurring between June 1, 2022 and July 22, 2022 (the "Data Breach").[6]

5.      As revealed by Nelnet's investigation letter:

> Nelnet Servicing provides technology services to Edfinancial and OSLA, including a website portal for the student loan borrowers Edfinancial and OSLA services to create and use online access to their loan accounts. Although Nelnet also services student loan accounts, no Nelnets serviced borrowers were impacted by this incident. On or about July 21, 2022, Nelnet Servicing notified Edfinancial and OSLA that it had discovered a vulnerability it believed led to this incident.
>
> Nelnet Servicing informed Edfinancial and OSLA that Nelnet Servicing's cybersecurity team took immediate action to secure the information system, block the suspicious activity, fix the issue, and launched an investigation with third-party forensic experts to determine the nature and scope of the activity. On August 17, 2022, this investigation determined that certain student loan account registration information was accessible by an unknown party beginning in June 2022 and ending on July 22, 2022. Following these actions, Nelnet Servicing notified the U.S. Department of Education, which in turn notified law enforcement.[7]

6.      Despite Nelnet's investigation finding that "certain student loan account registration information was accessible by an unknown party" from June to July 2022, Nelnet did not even conclude its investigation until August 17, 2022, and only notified affected Nelnet users on August 26, 2022.[8]

7.      In an August 26, 2022 letter, Edfinancial Services, LLC ("Edfinancial") informed Plaintiff that "Nelnet's investigation determined that the impacted information included ***your***

---

[6] *See* https://apps.web.maine.gov/online/aeviewer/ME/40/f6b4d5be-f7ef-412b-9966e323ad 6443 a0.shtm l (last visited September 15, 2022).

[7] *Id.*

[8] *Id.*

name, address, email address, phone number, and social security number." (emphasis added) (collectively "Personally Identifiable Information" or "PII").[9]

8.      As one of the country's largest student loan servicing companies, Nelnet may have exposed the PII of about 2.5 million borrowers.[10]

9.      Defendant's failure to ensure that its services and products were adequately secure fell far short of its obligations and Plaintiff's and Class Members' reasonable expectations for data privacy, had jeopardized the security of their PII, has violated applicable data privacy law, and has put them at serious risk of fraud and identity theft.

10.      Defendant also failed to ensure that Plaintiff's and Class Members' reasonable expectations for data privacy would be maintained, jeopardizing the security of their PII and putting them at serious risk of fraud and identity theft by failing to adequately maintain the security of Plaintiff's and Class Members' PII.

11.      Plaintiff brings this class action alleging that Defendant's conduct, as described more fully herein, caused Plaintiff's and others' PII to be exposed and stolen because of the failure of Defendant to safeguard and protect their sensitive information. Plaintiff seeks damages, and injunctive and other relief, on behalf of themselves and similarly situated consumers.

## **PARTIES**

12.      Plaintiff Cordaro is a resident of New York.   Mr. Cordaro received the aforementioned notice letter from Edfinancial dated August 26, 2022 via U.S. Mail notifying him of the Data Breach.

---

[9] *Id.*

[10]    *See*    https://www.pressherald.com/2022/09/06/data-breach-may-have-affected-over-15000-student-loan-borrowers-in-maine/ (last visited September 15, 2022).

13.     Defendant Nelnet Servicing, LLC is a Lincoln, Nebraska based student loan servicing company. Its principal place of business is at 121 S. 13th Street, Suite 100, Lincoln, Nebraska 68508.

14.     Defendant Nelnet Servicing, LLC, is a wholly-owned subsidiary of Nelnet Diversified Solutions LLC, a Lincoln, Nebraska limited liability company. Nelnet Diversified Solutions LLC is a wholly-owned subsidiary of Nelnet Inc., a Lincoln, Nebraska corporation that specializes in student loans and education financial services. Nelnet is the servicing system and customer website portal provider for Edfinancial.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of different states than Defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.     This Court has personal jurisdiction over Nelnet because it is headquartered in Nebraska, is authorized to and conducts business in Nebraska, and has sufficient minimum contacts with this state and/or sufficiently avail itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

17.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, has intentionally availed itself of the laws and markets within this District through its promotion, marketing, distribution and sales activities in this District, and

- 4 -

a significant portion of the facts and circumstances giving rise to Plaintiff's Complaint occurred in or emanated from this District.

<b><u>FACTUAL ALLEGATIONS</u></b>

**A.**   **<u>The Data Breach</u>**

18.   Nelnet promised that it would protect borrowers' PII and failed to do so.  In a statement it said "[p]rotecting the personal information customers, clients, and associates entrust to Nelnet is a top priority" and that it "takes safeguarding data seriously and is committed to continue to taking steps to keep information secure."[11]

19.   Despite these promises, Nelnet acknowledged that an unknown party accessed "certain student loan account registration" held by its Nelnet Servicing Division sometime between early June and late July of 2022.[12]

20.   Nelnet said that on July 21, 2022 it notified affected student loan servicers, which media reports have identified as the Oklahoma Student Loan Authority and EdFinancial Services LLC, about the incident.[13]

21.   However, borrowers whose loans are serviced by Nelnet were not notified until August 26, 2022, over a month later. Instead, upon information and belief, Nelnet chose not to notify affected borrowers, but instead launched its own investigation.

---

[11]   *See*   https://www.pressherald.com/2022/09/06/data-breach-may-have-affected-over-15000-student-loan-borrowers-in-maine/ (last visited September 15, 2022).

[12]   *See*   https://starherald.com/news/state-and-regional/nelnet-data-breach-may-have-hit-more-than-2-million-student-loan-borrowers/article_f9ec8362-7ff5-5546-984f-0f42a4ffbf0d.html   (last visited September 15, 2022).

[13] *Id.*

22. Nelnet stated "[o]ur cybersecurity team discovered a vulnerability believed to have led to this incident and took immediate action to secure the systems, block the suspicious activity, and fix the issue," Nelnet said in a statement. "The Department of Education was also notified, and we launched an investigation with third-party forensic experts to determine the nature and scope of the activity."[14]

**B.** **Impact of the Data Breach**

23. The Data Breach creates a heightened security concern to borrowers who use Nelnet because their PII, including demographic information and Social Security numbers were included.

24. In addition to harms associated with the disclosure of borrower information, the Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id.*

25. Theft of Social Security numbers creates a particularly alarming situation for victims because those numbers cannot easily be replaced. Indeed, the Social Security Administration stresses that the loss of an individual's Social Security number can lead to identity theft and extensive fraud:

> A dishonest person who has your Social Security number can use it
> to get other personal information about you. Identity thieves can use

---

[14] *Id.*

> your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[15]

26.     It is also difficult to obtain a new Social Security number. A breach victim would have to demonstrate ongoing harm from misuse of her Social Security number, and a new Social Security number will not be provided until after the harm has already been suffered by the victim.

27.     Given the highly sensitive nature of Social Security numbers, theft of these numbers in combination with other personally identifying information may cause damage to victims for years.

28.     Defendant had a duty to keep PII confidential and to protect it from unauthorized disclosures. Plaintiff and Class Members provided their PII to Nelnet with the understanding that Nelnet and any business partners to whom Nelnet disclosed PII would comply with their obligations to keep such information confidential and secure from unauthorized disclosures.

29.     Defendant's data security obligations were particularly important given the substantial increases in data breaches in recent years, which are widely known to the public and to anyone in Nelnet's industry of data collection and transfer.[16]

30.     Data breaches are not new. These types of attacks should be anticipated by companies that store sensitive and personally identifying information, and these companies must ensure that data privacy and security is adequate to protect against and prevent known attacks.

---

[15] *Identity Theft and Your Social Security Number*, Social Security Administration, https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed September 15, 2022).

[16] *See* https://nationalmortgageprofessional.com/news/lakeview-loan-servicing-faces-multiple-lawsuits-over-data-breach (last visited September 15, 2022).

31.     It is well known among companies that store sensitive personally identifying information that sensitive information is valuable and frequently targeted by criminals and that they need to implement appropriate security measures to keep criminals from accessing PII.

32.     Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit.  Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

33.     There may be a time lag between when the harm occurs versus when it is discovered, and also between when PII is stolen and when it is used.  According, to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

34.     With access to an individual's PII, criminals can commit all manners of fraud, including obtaining a driver's license or official identification card in the victim's name but with the thief's picture, or filing a fraudulent tax return using the victim's information.

35.     PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years.  As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen PII directly on various illegal websites making the information publicly available, often for a price.

36.     Nelnet is, and at all relevant times has been, aware that the sensitive PII it handles and stores in connection with providing its services is highly sensitive.  As a company that provides

services involving highly sensitive and identifying information, Nelnet is aware of the importance of safeguarding that information and protecting its systems and products from security vulnerabilities.

37.     Nelnet was also aware, or should have been aware, of regulatory and industry guidance regarding data security.

38.     Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable data breaches, Defendant failed to take reasonable steps to adequately protect its systems from being breached and to properly secure its platforms, leaving its clients and all persons who provide sensitive PII to its clients exposed to risk of fraud and identity theft.

39.     As a result of the events detailed herein, Plaintiff and Class Members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; disclosure of their Social Security numbers; disclosure of financial status; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of PII; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of PII.

40.     As a result of the Data Breach, Plaintiff and Class Members' privacy has been invaded, their PII is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

**PLAINTIFF'S EXPERIENCES**

41.     Plaintiff Cordaro learned of the Data Breach via a notice letter from Edfinancial dated August 26, 2022, and received the letter shortly thereafter.

42.     Plaintiff's student loans are serviced by Nelnet.

43.     As a result of learning of the Data Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the news reports of the Data Breach, exploring credit monitoring and identity theft insurance options, and monitoring his PII.

44.     Plaintiff suffered actual injury in the form of damages to and diminution of the value of PII – a form of intangible property that Plaintiff entrusted to Defendant for the purpose of loan servicing, which was compromised in and as a result of the Data Breach.

45.     Plaintiff has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

46.     Plaintiff has suffered imminent and impending injury arising from the disclosure of his PII, including his Social Security number, and for the substantially increased risk of fraud, identity theft, and misuse resulting from PII being placed in the hands of unauthorized third parties and criminals.

47.     Plaintiff has a continued interest in ensuring that PII, which remains backed up in Defendant's possession, is protected and safeguarded from further and future breaches.

**CLASS ACTION ALLEGATIONS**

48.     Plaintiff brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all members of the following nationwide class (the "Class"):

> All persons in the United States whose PII was exposed to unauthorized third parties as a result of the compromise of Nelnet Servicing, LLC that occurred in or around June and July 2022.

- 10 -

Plaintiff reserves the right to modify, change, or expand the Class definition, including proposing additional subclasses, based on discovery and further investigation.

49.     Plaintiff further brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Subclass (the "New York Subclass"):

> All residents of New York whose PII was exposed to unauthorized third parties as a result of the compromise of Nelnet Servicing, LLC that occurred in or around June and July 2022.

Plaintiff reserves the right to modify, change, or expand the New York Subclass definition, including proposing additional subclasses, based on discovery and further investigation.

50.     Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant has a controlling interest, and its current or former employees, officers, and directors; (3) counsel for Plaintiff and Defendant; and (4) legal representatives, successors, or assigns of any such excluded persons.

51.     The Classes meet all of the criteria required by Federal Rule of Civil Procedure 23(a).

52.     **Numerosity**: The Class Members are so numerous that joinder of all members is impracticable.  Though the exact number and identities of Class Members are unknown at this time, it appears that the membership of the Classes are in the tens of thousands.  The identities of Class members are also ascertainable through Defendant's records.

53.     **Commonality**: Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions affecting only individual members of the Class.  Common questions include, but are not limited to, the following:

(a)     Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

(b)     Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

(c)     Whether and when Defendant actually learned of the Data Breach;

(d)     Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

(e)     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

(f)     Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

(g)     Whether Defendant was negligent or negligent *per se*;

(h)     Whether Plaintiff and Class Members are entitled to relief from Defendant as a result of Defendant's misconduct, and if so, in what amounts; and

(i)     Whether Class members are entitled to injunctive and/or declaratory relief to address the imminent and ongoing harm faced as a result of the Data Breach.

54.     **Typicality**: Plaintiff's claims are typical of the claims of the Classes he seeks to represent, in that the named Plaintiff and all members of the proposed Classes have suffered similar injuries as a result of the same misconduct alleged herein.  Plaintiff has no interests adverse to the interests of the other members of the Classes.

55.    **Adequacy**:  Plaintiff will fairly and adequately protect the interests of the Classes and has retained attorneys well experienced in class actions and complex litigation as their counsel, including cases alleging breach of privacy and negligence claims arising from corporate misconduct.

56.    The Classes also satisfy the criteria for certification under Federal Rule of Civil Procedure 23(b) and 23(c).  Among other things, Plaintiff avers that the prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant; that the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; that Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed Classes as a whole; that questions of law or fact common to the Classes predominate over any questions affecting only individual members and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action.  Plaintiff also avers that certification of one or more subclasses or issues may be appropriate for certification under Federal Rule of Civil Procedure 23(c).  Plaintiff further states that the interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of the Classes will not be difficult.

57.    Plaintiff and other members of the Classes have suffered damages as a result of Defendant's unlawful and wrongful conduct.  Absent a class action, Defendant's unlawful and

improper conduct shall, in large measure, not go remedied.  Absent a class action, the members of the Classes will not be able to effectively litigate these claims and will suffer further losses.

## CLAIMS FOR RELIEF

### COUNT I
**Negligence**

58.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

59.     Plaintiff brings this claim on behalf of the Class, or in the alternative, the New York Subclass.

60.     Nelnet negligently represented its services and products as well protected, claiming that it "takes careful steps to safeguard customer information" despite leaving Plaintiff's and the Classes' PII exposed to unauthorized access.

61.     Defendant was entrusted with, stored, and otherwise had access to the PII of Plaintiff and Class Members.

62.     Defendant knew, or should have known, of the risks inherent to storing the PII of Plaintiff and Class Members, and to not ensuring that its products and services were secure.  These risks were reasonably foreseeable to Defendant.

63.     Defendant owed duties of care to Plaintiff and Class Members whose PII had been entrusted to them.

64.     Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate data security in connection with marketing, sale, and use of its services and products. Defendant had a duty to safeguard Plaintiff's and Class Members' PII and to ensure that their systems and products adequately protected PII.

- 14 -

65.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

66.     Defendant acted with wanton disregard for the security of Plaintiff's and Class Members' PII.

67.     The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties.  Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII.

68.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) the continued risk to their PII, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII in its continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

69.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members face an increased risk of future harm.

70.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members and are entitled to damages in an amount to be proven at trial.

## COUNT II
### Negligence *Per Se*

71.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

72.     Plaintiff brings this claim on behalf of the Class, or in the alternative, the New York Subclass.

73.     Pursuant to the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, Defendant had a duty to provide adequate data security practices to safeguard Plaintiff's and Class Members' PII.

74.     Pursuant to other state and federal laws requiring the confidentiality of PII, including, but not limited to the FTC Act, Defendant had a duty to implement reasonably safeguards to protect Plaintiff's and Class Members' PII.

75.     Defendant breached its duties to Plaintiff and Class Members under the FTC Act, and among other laws, by failing to provide fair, reasonable, or adequate data security in order to safeguard Plaintiff's and Class Members' PII.

76.     Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

77.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

78.     The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties.  Defendant knew or should have known that it was failing to meet its duties, and that its breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII.

79.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members face an increased risk of future harm.

80.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

### COUNT III
### Invasion of Privacy

81.     Plaintiff realleges each and every allegation contained above and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

82.     Plaintiff brings this claim on behalf of the Class, or in the alternative, the New York Subclass.

83.     Plaintiff and Class Members had a reasonable and legitimate expectation of privacy in the PII that Defendant disclosed without authorization.

84.     Defendant owed a duty to Plaintiff and Class Members to keep their PII confidential.

85.     Defendant failed to protect and release to unknown and unauthorized third parties the PII of Plaintiff and Class Members.

86.     By failing to keep Plaintiff's and Class Members' PII safe and disclosing PII to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiff's and Class Member's privacy by, among others, (i) intruding into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) improperly using their PII properly obtained for a specific purpose for another purpose, or disclosing it to a third party; (iii) failing to adequately secure their PII from disclosure to unauthorized persons; and (iv) enabling the disclosure of Plaintiff's and Class Members' PII without consent.

87.     Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' position would consider their actions highly offensive.

88.     As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their PII was unduly frustrated and thwarted, and caused damages to Plaintiff and Class Members.

89.     In failing to protect Plaintiff's and Class Members' PII, and in disclosing Plaintiff's and Class Members' PII, Defendant acted with malice and oppression and in conscious disregard of Plaintiff's and Class Members' rights to have such information kept confidential and private.

90.     Plaintiff seeks injunctive relief on behalf of the Classes, restitution, as well as any and all other relief that may be available at law or equity.  Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause irreparable injury to Plaintiff and Class Members.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Classes.

## COUNT IV
### Breach of Confidence

91.     Plaintiff realleges each and every allegation contained above, and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

92.     Plaintiff brings this claim on behalf of the Class, or in the alternative, the New York Subclass.

93.     At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' PII that Plaintiff and Class Members provided to Defendant.

94.     Defendant's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

95.     Plaintiff and Class Members provided their PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PII to be disseminated to any unauthorized third parties.

96.     Plaintiff and Class Members provided their PII to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that PII from unauthorized disclosure.

97.     Defendant voluntarily received in confidence Plaintiff's and Class Members' PII with the understanding that PII would not be disclosed or disseminated to unauthorized third parties or to the public.

98.     Due to Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and Class Members' PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

99.     As a proximate result of such unauthorized disclosures, Plaintiff and Class Members suffered damages.

100.    But for Defendant's disclosure of Plaintiff's and Class Members' PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, access, and used by unauthorized third parties.

101.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' PII.

Defendant knew or should have known that its methods of accepting, storing, transmitting and using Plaintiff's and Class Members' PII was inadequate.

102.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) the continued risk to their PII, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII in its continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

103.    As a direct proximate result of such unauthorized disclosures, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT V
### Breach of Contract

104.    Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

105.    Plaintiff brings this claim on behalf of the Class, or in the alternative, the New York Subclass.

106.   Plaintiff and Class Members provided their PII to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that PII from unauthorized disclosure.

107.   Plaintiff and the Class Members are parties to contracts with Nelnet.  Under the circumstances, recognition of a right to performance by Plaintiff and the Class Members is appropriate to effectuate the intentions of the parties to these contracts.  One or more of the parties to these contracts intended to give Plaintiff and the Class Members the benefit of the performance promised in the contracts.

108.   Defendant breached these agreements, which directly and/or proximately caused Plaintiff and the Class Members to suffer substantial damages.

109.   Accordingly, Plaintiff and Class Members are entitled to damages, restitution, disgorgement of profits and other relief in an amount to be proven at trial.

### COUNT VI
### New York Gen. Bus. Law § 349

110.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

111.   Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

112.   By the acts and conduct alleged herein, Defendant has committed unfair or deceptive acts and practices by failing to remediate foreseeable security and privacy risks, failing to comply with common law and statutory duties, misrepresenting that adequate security measures were provided, and omitting material fact that it did not provide adequate security measures.

113.   The foregoing deceptive acts and practices were directed at consumers.

114.    The foregoing deceptive acts and practices are misleading in a material way because they were likely to deceive reasonable consumers about Nelnet's ability to protect consumers' PII.

115.    Plaintiff and members of the New York Subclass were injured as a result because they would not have used Nelnet's services had they known Nelnet could not and did not protect their PII. Plaintiff and members of the New York Subclass suffered losses, including but not limited diminution in value of PII, overpayment of Nelnet's services, and imminent threat of identity theft and loss of PII.

116.    Nelnet's deceptive acts and practices affected the public interest and consumers at large, including New York residents affected by the Data Breach.

117.    On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT VII
### Unjust Enrichment

118.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

119.    Plaintiff brings this claim individually and on behalf of members of the Class, or in the alternative, the New York Subclass against Defendant.

120.    Plaintiff and Class Members conferred benefits on Defendant by using its services.

121.    Defendant has knowledge of such benefits.

122.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' use of its services. Retention of those moneys under these

circumstances is unjust and inequitable because Defendant did not disclose that Plaintiff's and Class Members' PII would not be adequately protected.

123.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

**COUNT VIII**
**Declaratory Relief**
**28 U.S.C. § 2201**

124.    Plaintiff realleges each and every allegation contained above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

125.    Plaintiff brings this claim on behalf of the Class, or in the alternative, the New York Subclass.

126.    An actual controversy has arisen and now exists between Plaintiff and the putative Classes on the one hand, and Defendant on the other, concerning Defendant's failure to protect Plaintiff's and Class Members' PII in accordance with applicable state and federal regulations and the agreements between the parties.  Plaintiff and the Class Members contend that Defendant failed to maintain adequate and reasonable privacy practices to protect their PII while on the other hand, Defendant contends they have complied with applicable state and federal regulations and its agreements with Plaintiff and Class Members to protect their PII.

127.    Accordingly, Plaintiff and Class Members entitled to and seek a judicial determination of whether Defendant has performed, and are performing, their statutory and contractual privacy practices and obligations necessary to protect and safeguard Plaintiff's and Class Members' PII from further unauthorized, access, use, and disclosure, or insecure disposal.

128.    A judicial determination of the rights and responsibilities of the parties over Defendant's privacy practices is necessary and appropriate at this time so that: (1) that the rights

- 23 -

of the Plaintiff and the Classes may be determined with certainty for purposes of resolving this action; and (2) so that the Parties will have an understanding of Defendant's obligations in the future given its continuing legal obligations and ongoing relationships with Plaintiff and Class Members.

## COUNT IX
### Breach of Nebraska Consumer Protection Act ("CPA")
### Neb. Rev. Stat. § 59-1601, et seq.

129.     Plaintiff fully incorporates by reference all of the above paragraphs, as though fully set forth herein.

130.     Plaintiff brings this claim on behalf of himself and the Class.

131.     Plaintiff, Class members, and Defendant each qualify as a person engaged in trade or commerce as contemplated by the Nebraska Consumer Protection Act ("CPA"), Neb. Rev. Stat. § 59-1601, *et seq.*

132.     As alleged herein, Defendant engaged in unfair or deceptive acts or practices in the conduct of consumer transactions in violation of the CPA, including but not limited to: (1) representing that its services were of a particular standard or quality that it knew or should have known were of another; (2) Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Class Members' PII, which was a direct and proximate cause of the Data Breach; (3) Failing to identify foreseeable security and privacy risks, and remediate identified security and privacy risks, which was a direct and proximate cause of the Data Breach; (4) Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class Members' PII, including duties imposed by the FTC Act, which was a direct and proximate cause of the Data Breach; (5) Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' PII, including by implementing and maintaining reasonable security measures; (6) Omitting, suppressing, and concealing the material fact that it

- 24 -

did not reasonably or adequately secure Plaintiff's and Class members' PII; and (7) Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII, including duties imposed by the FTC Act, which was a direct and proximate cause of the Data Breach.

133.    Defendant's representations and omissions were material because it was likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' PII. Defendant's conduct likewise violated the FTC Act.

134.    Furthermore, Defendant's failure to give timely notice of this Data Breach in violation Nebraska's notification of security breach statute, Neb. Rev. Stat. § 87-801 *et seq*. is an unfair or deceptive act pursuant to Neb. Rev. Stat. § 87-808, and therefore violates the Consumer Protection Act.

135.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the PII of Plaintiff and Class Members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

136.    The aforesaid conduct constitutes a violation of the CPA, Neb. Rev. Stat. § 59-1603, in that it is a restraint on trade or commerce.

137.    These violations have caused financial injury to the Plaintiff and the other Class Members.

138.    The Defendant's violations of the CPA have an impact of great or general importance on the public. Defendant is a Nebraska-based company and the Data Breach likely affected Nebraska residents.

139.    As a direct and proximate result of Defendant's violation of the CPA, Plaintiff and Class Members are entitled to a judgment under Neb. Rev. Stat. § 59-1609 to enjoin further

violations, to recover actual damages, to recover the costs of this action (including reasonable attorney's fees), and such other further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the Classes, prays for relief as follows:

A.     For an Order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23 against Defendant, appointing Plaintiff as Class Representative of the Classes, and Kaplan Fox & Kilsheimer LLP as Class Counsel;

B.     Awarding monetary, punitive and actual damages and/or restitution, as appropriate;

C.     Awarding declaratory and injunctive relief as permitted by law or equity to assure that the Classes have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

D.     Prejudgment interest to the extent allowed by the law;

E.     Awarding all costs, experts' fees and attorneys' fees, expenses and costs of prosecuting this action; and

F.     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

DATED: September 15, 2022

 /s/ *Joel B. Strauss*
Joel B. Strauss (NY Bar #2514032)
Attorney for Plaintiff Christopher Cordaro
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY  10022
Telephone: (212-687-1980
Facsimile:  (212) 687-7714
Email: *jstrauss@kaplanfox.com*

- 26 -

Laurence D. King (CA Bar #206423)
Matthew B. George (to be admitted *pro hac vice*)
Blair E. Reed (to be admitted *pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA  94612
Telephone: (415) 772-4700
Facsimile:  (415) 772-4707
Emails: *lking@kaplanfox.com*
      *mgeorge@kaplanfox.com*
      *breed@kaplanfox.com*

*Attorneys for Plaintiffs Christopher Cordaro*