# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSE HERRICK, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No. 4:22-cv-3181<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ROBERT CARLSON, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No. 4:22-cv-3184<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| CAREY M. BALLARD, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No. 4:22-cv-3185<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| JENNIFER HEGARTY, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>NELNET SERVICING, LLC,<br><br>       Defendant. | Case No. 4:22-cv-3186<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| AMANDA BEASLEY, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>NELNET SERVICING, LLC,<br><br>       Defendant. | Case No. 4:22-cv-3187<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MICHAEL VARLOTTA, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>NELNET SERVICING, LLC,<br><br>       Defendant. | Case No. 4:22-cv-3188<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| DYLAN HOLLENKAMP, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No. 4:22-cv-3189<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
|---|---|
| WILLIAM SPEARMAN, BRITTNI LINN, JESSICA ALEXANDER, CHRISTOPHER SANGMEISTER, TAYLOR VETTER, NICHOLE ALLOCCA, KAYLI LAZARD, and BRIDGET CAHILL, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No. 4:22-cv-3191<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| BARBARA MILLER, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No. 4:22-cv-3193<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| FRANCINE SIMMONS, individually and on behalf all others similarly situated, | Case No. 4:22-cv-3194 |
| | |
| Plaintiff, | The Honorable John M. Gerrard, U.S.D.J. |
| | The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | |
| | CLASS ACTION |
| NELNET SERVICING, LLC, | |
| | |
| Defendant. | |
| ANTONIA BIRD, individually, and on behalf of all others similarly situated, | Case No. 4:22-cv-3195 |
| | |
| Plaintiff, | The Honorable John M. Gerrard, U.S.D.J. |
| | The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | |
| | CLASS ACTION |
| NELNET SERVICING, LLC, | |
| | |
| Defendant. | |
| VERONICA JOAQUIN-TORRES, individually and on behalf of all others similarly situated, | Case No. 4:22-cv-3196 |
| | |
| Plaintiff, | The Honorable John M. Gerrard, U.S.D.J. |
| | The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | |
| | CLASS ACTION |
| NELNET SERVICING, LLC, | |
| | |
| Defendant. | |

| KENNEDY FREEMAN, and AARON MORRIS, Individually, and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> NELNET SERVICING, LLC, <br><br> Defendant. | Case No. 4:22-cv-3197 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |
|---|---|
| MIA SAYERS and KYLEE WILLIAMS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NELNET SERVICING, LLC, <br><br> Defendant. | Case No.  4:22-cv-3203 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |
| PAMELA BUMP, MELISSA CHARBONNEAU, DOUGLAS CONLEY, NOAH HELVEY, DALLIN ILER, DUSTIN JONES, DEVINNE PETERSON, JUSTIN RANDALL, SOFIA RODRIGUEZ, and RACHEL WOODS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NELNET SERVICING, LLC, <br><br> Defendant. | Case No. 4:22-cv-3204 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |

| | |
|---|---|
| CHRISTOPHER CORDARO, Individually, and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3207<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| RYAN GAMEN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3209<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| HUNTER FREELAND, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3211<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| MAX EICHENBLATT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3227<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| --- | --- |
| NEIL KITZLER, an individual, and on behalf of classes of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC, a Nebraska Limited Liability Company, and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. 4:22-cv-3241<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ANTHONY QUINN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EDFINANCIAL SERVICES, LLC and NELNET SERVICING, LLC,<br><br>Defendants. | Case No. 8:22-cv-413<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| IAN SCOTT, LESLY CANALES, ERIC POLANCO, JOSHUA SANCHEZ, and DELILAH OLIVEIRA, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3259<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONSOLIDATE PURSUANT TO FED. R. CIV. P. 42(a), APPOINT INTERIM CO-LEAD CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(3), AND TO FILE A CONSOLIDATED COMPLAINT AND SET A BRIEFING SCHEDULE**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ........................................................................................................ 2

III.  ARGUMENT ............................................................................................................. 4

  A.  The District of Nebraska Actions Should Be Consolidated ................................... 4

  B.  The Court Should Appoint Interim Co-Lead Class Counsel ................................ 7

    1.  Legal Standard Under Fed. R. Civ. P. 23(g)(3) ................................................. 7

      i.   Lowey/SGT Performed Substantial Work in Investigating this Action ....................... 9

      ii.  Lowey/SGT are Knowledgeable and Experienced in Leading and Successfully
           Resolving Complex Consumer Class Actions, Including Data Breach Litigation ..... 10

      iii. Lowey/SGT are Committed to Devoting Significant Resources to Representing and
           Advancing the Interests of the Class ................................................................... 16

      iv.  Other Matters Pertinent to Lowey/SGT's Ability to Fairly and Adequately Represent
           the Interests of the Class ..................................................................................... 17

        a.  Lowey/SGT Propose a Lean, Inclusive Structure ............................................. 17

        b.  Lowey/SGT Will Promote Efficiency and Expedite the Litigation ...................... 18

  C.  The Court Should Set a Briefing Schedule for Filing and Responding to a Consolidated
      Complaint ........................................................................................................... 20

IV.  CONCLUSION ........................................................................................................ 20

**TABLE OF AUTHORITIES**

**Cases**

*Chen v. Target Corp.*, No. 21-cv-1247 (DWF) (DTS),
2021 WL 6063632 (D. Minn. Dec. 22, 2021) ........................................................ 8

*Cisler v. Paul A. Willsie Co.*,
No. 8:09-cv-365, 2010 WL 3237222 (D. Neb. Aug. 13, 2010) ................................ 4

*Cohen v. Ne. Radiology, P.C.*,
No. 20-cv-1202 (VB), 2021 WL 293123 (S.D.N.Y. Jan. 28, 2021) ....................... 11

*Delre v. Perry*,
288 F.R.D. 241 (E.D.N.Y. 2012) ............................................................................ 7

*Duqum v. Scottrade, Inc.*,
No. 4:15-cv-1537 (SPM), 2016 WL 1700427 (E.D. Mo. Apr. 28, 2016) ................ 7

*Fulton-Green v. Accolade, Inc.*,
No. 18-cv-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ............................... 10

*Gennaro v. Nat'l Rsch. Corp.*,
No. 4:17-cv-3152, 2017 WL 5905512 (D. Neb. Nov. 30, 2017) .............................. 6

*Gordon v. Chipotle Mexican Grill, Inc.*,
No. 17-cv-1415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) .............................. 10

*In re Navistar Maxxforce Engines Mktg., Sales Pracs. & Prod. Liab. Litig.*,
No. 14-cv-10318, 2015 WL 1216318 (N.D. Ill. Mar. 5, 2015) ............................... 8

*In re Rutter's Data Sec. Breach Litig.*,
No. 1:20-cv-382, 2021 WL 3733137 (M.D. Pa. July 22, 2021) ............................ 11

*In re Rutter's Inc. Data Sec. Breach Litig.*,
511 F. Supp. 3d 514 (M.D. Pa. 2021) .................................................................... 11

*In re Sonic Corp. Customer Data Breach Litig.*,
No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ....................... 10

*In re Terazosin Hydrochloride Antitrust Litigation*,
220 F.R.D. 672 (S.D. Fla. 2004) ........................................................................... 10

*In re USAA Data Sec. Litig.*,
No. 21-cv-5813 (VB), 2022 WL 3348527 (S.D.N.Y. Aug. 12, 2022) .................... 11

*In re Wawa, Inc. Data Sec. Litig.*,
No. 19-cv-6019, 2021 WL 1818494 (E.D. Pa. May 6, 2021) ................................. 11

*Kaplan v. 21st Century Oncology Holdings, Inc.*,
No. 2:16-cv-210, 2016 WL 9383330 (M.D. Fla. July 21, 2016), *report and recommendation
adopted*, No. 2:16-cv-210, 2016 WL 4204781 (M.D. Fla. Aug. 10, 2016) ........................... 5, 6

*Outten v. Wilmington Tr. Corp.*,
281 F.R.D. 193 (D. Del. 2012) ................................................................ 10

*UNeMed Corp. v. ProMera Health, LLC*,
No. 8:15-cv-135, 2016 WL 1259387 (D. Neb. Mar. 30, 2016) .................................. 5

*Valentine v. Brown*,
No. 8:16-cv-131, 2016 WL 3910259 (D. Neb. July 14, 2016) .................................. 4

## Rules

Fed. R. Civ. P. 23(g)(1)(A) ................................................................ 8

Fed. R. Civ. P. 23(g)(1)(B) ................................................................ 8, 18

Fed. R. Civ. P. 23(g)(3) ................................................................ 1, 7

Fed. R. Civ. P. 23(g)(4) ................................................................ 7

Fed. R. Civ. P. 42(a) ................................................................ 1, 4

## Treatises

9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2383 (2d ed. 1994) ... 4

*Manual for Complex Litigation*, § 21.11 (4th ed. 2004) ........................................ 7, 19

The Lowey and SGT Plaintiffs[1] submit this memorandum of law in support of their motion to: (1) consolidate the aforementioned 22 class actions pending against Defendants Nelnet Servicing, LLC ("Nelnet") and EdFinancial Services, LLC ("EdFinancial") (collectively, the "Defendants") in this District, including any and all subsequently-filed related actions, or cases filed involving similar facts or claims, pursuant to Fed. R. Civ. P. 42(a); (2) appoint Lowey Dannenberg, P.C. ("Lowey") and Silver Golub & Teitell LLP ("SGT") as Interim Co-Lead Class Counsel (collectively, "Lowey/SGT") pursuant to Fed. R. Civ. P. 23(g)(3); and (3) to set a schedule for consolidated plaintiffs to file their Consolidated Complaint and for Defendants to respond.

## I.     INTRODUCTION

It has now become apparent that a minority group of Plaintiffs and Defendants are rushing to settle this case out from under the Class prior to the filing of a consolidated complaint or the appointment of interim class counsel. Lowey/SGT learned this disappointing fact shortly after oral argument before the JPML on December 1, 2022.[2] While it is easy to see why Defendants may want to rush to settle this case given the egregious violation of law and potential for tremendous liability resulting from their disclosure of 2.5 million student loan borrowers highly sensitive information, Defendants do not get to choose lead, interim class counsel. Nor should a few plaintiffs be allowed to hijack this case without going through the process created by Fed. R. Civ. P 23(g)(3).

---

[1] The Lowey and SGT Plaintiffs are William Spearman, Brittni Linn, Jessica Alexander, Christopher Sangmeister, Taylor Vetter, Nichole Allocca, Kayli Lazard, and Bridget Cahill in *Spearman, et al. v. Nelnet Servicing, LLC*, Case No. 4:22-cv-3191 (D. Neb.) (the "*Spearman* Plaintiffs"); Pamela Bump, Melissa Charbonneau, Douglas Conley, Noah Helvey, Dallin Iler, Dustin Jones, Devinne Peterson, Justin Randall, Sofia Rodriguez, and Rachel Woods in *Bump, et al. v. Nelnet Servicing, LLC*, Case No. 4:22-cv-3204 (D. Neb.) (the "*Bump* Plaintiffs"); and Ian Scott, Lesly Canales, Eric Polanco, Joshua Sanchez, and Delilah Oliveira in *Scott, et al. v. Nelnet Servicing, LLC*, Case No. 4:22-cv-3259 (D. Neb.) (the "*Scott* Plaintiffs") (together with the *Spearman* and *Bump* Plaintiffs, collectively, the "Plaintiffs").
[2] *See In re: Nelnet Servicing, LLC, Customer Data Security Breach Litigation*, MDL No. 3053.

The Court should act swiftly and appoint Lowey/SGT, who as counsel in the *Spearman*, *Bump*, and *Scott* Actions represent 23 plaintiffs from 16 states—**more than half of all plaintiffs** asserting claims in this District—as Interim Co-Lead Class Counsel to protect the interests of the Class. As explained below, Lowey/SGT meet each of Rule 23(g)(3)'s requirements: they have done the work needed to prosecute the consolidated action and have the knowledge and experience required to do so; the Lowey/SGT structure also benefits from being extremely efficient, having only 2 firms, and will avoid waste or duplication of effort; and given their size, resources and experience, and history of working together (and with the assistance of capable local Omaha, Nebraska counsel, the Goosmann Law Firm, PLC), Lowey/SGT can cover any need that could arise for the Class without duplication, or unnecessary expense typically generated by the bloated leadership structures that appear in most data breach cases.

## II.      **BACKGROUND**

Nelnet is one of the largest student loan servicers in the United States, servicing $589.5 billion in student loans for over 17 million borrowers. In addition to servicing student loans, Nelnet provides online technology services such as web portal and payment processing services to other student loan servicers, including EdFinancial and the Oklahoma Student Loan Authority ("OSLA").

On August 26, 2022, Nelnet began publicly notifying state Attorneys General and approximately 2,501,324 impacted current and former Nelnet account holders that their highly valuable, protected personally identifiable information, including without limitation, their names, addresses, email addresses, phone numbers, and Social Security numbers (collectively, "PII") had been accessed and stolen by an unauthorized third-party (the "Data Breach").

In the aftermath of Nelnet's Data Breach announcement, beginning on August 30, 2022, 23 putative class action complaints were ultimately filed against Nelnet, with 2 actions naming both Nelnet and EdFinancial.[3] All but 3 actions were filed in or removed to the District of Nebraska.[4] Plaintiffs' complaints[5]—*Spearman*, *Bump*, and *Scott*—contain the *most plaintiffs* (23) and are brought by plaintiffs from the *most states* (16) (*i.e.,* Arizona, California, Connecticut, Colorado, Florida, Illinois, Indiana, Massachusetts, Michigan, New Mexico, New York, Pennsylvania, South Carolina, Texas, Utah, and Wisconsin). These states account for more than 60% of the nation's population, demonstrating that Lowey/SGT's clients are the most representative of the Class.

Plaintiffs' initiation of MDL proceedings ultimately had its desired catalyst effect. While the JPML denied transfer of the *Kohrell* Action to the District of Nebraska, Plaintiffs' MDL motion caused all but 1 out of the 23 actions to be filed in, removed to, or transferred to this District, ensuring that this litigation will primarily be litigated in Nebraska, where Nelnet is headquartered.

Additionally, all actions similarly allege that Nelnet failed to properly secure and safeguard the PII for approximately 2.5 million impacted current and former Nelnet account holders which was exposed in a hack that allowed unauthorized access to Nelnet's systems. All actions involve near identical factual allegations regarding the same Data Breach, have materially similar allegations against Defendants, and seek to certify materially similar classes.

---

[3] *See Kohrell v. Nelnet Servicing, LLC et al.*, Case No. 3:22-cv-314 (E.D. Tenn.) (the "*Kohrell* Action") and the *Quinn* Actions.
[4] The *Kitzler* Action was initially filed in the Central District of California and then transferred to the District of Nebraska; the *Quinn* Action was initially filed in Illinois state court, removed to the Northern District of Illinois, and then ultimately transferred to the District of Nebraska; and the *Kohrell* Action was filed in the Eastern District of Tennessee, where it remains pending.
[5] *See* Complaints in *Spearman*, *Bump*, and *Scott* Actions.

## III.    ARGUMENT

### A.  The District of Nebraska Actions Should Be Consolidated

"Federal Rule of Civil Procedure 42(a) allows for consolidation of cases involving common issues of law or fact as a matter of convenience and economy in judicial administration" *Valentine v. Brown*, No. 8:16-cv-131, 2016 WL 3910259, at *2 (D. Neb. July 14, 2016) (citing Fed. R. Civ. P. 42(a)). The Court has "broad discretion" to decide whether to consolidate matters. *Cisler v. Paul A. Willsie Co.*, No. 8:09-cv-365, 2010 WL 3237222, at *2 (D. Neb. Aug. 13, 2010) (internal citation omitted). Further, "[t]he consent of the parties is not required by Rule 42(a) for consolidation." *Valentine*, 2016 WL 3910259, at *2 (citing 9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2383 (2d ed. 1994)). When deciding whether to consolidate the actions, "the court must weigh the saving of time and effort that would result from consolidation against any inconvenience, expense, or delay that it might cause." *Valentine*, 2016 WL 3910259, at *2. "[D]istrict courts generally take a favorable view of consolidation." *Id.* (quoting Wright & Miller, § 2383).

Here the actions should be consolidated. Consolidation would save time and effort, as it would avoid duplicative motion practice and discovery. The actions raise the same common questions of law and arise from the same set of facts surrounding common Defendants' alleged failure to properly secure, safeguard, and protect the PII of Nelnet student loan borrowers in the same Data Breach.[6]  The District of Nebraska Actions will involve substantially the same discovery. Consolidation would add efficiency and consistency in judicial rulings and would reduce delay and costs. *See UNeMed Corp. v. ProMera Health, LLC*, No. 8:15-cv-135, 2016 WL

---

[6] That fact that EdFinancial is named is not an impediment to consolidation *See UNeMed Corp.*, 2016 WL 1259387, at *3 (granting consolidation when the actions involved the same parties and the same issues, even though one of the actions involved additional parties).

1259387, at *3 (D. Neb. Mar. 30, 2016) ("Consolidation for discovery will promote the goals of

efficient use of judicial resources without leading to inconvenience, delay, unfair prejudice, or

additional expense.").

Indeed, if not consolidated, the District of Nebraska Actions would result in virtually

identical discovery requests, duplicative motion practice, and would cause an unnecessary drain

on judicial resources. This is still true despite minor variations in class definitions and state-

specific causes of actions. As explained in *Kaplan v. 21st Century Oncology Holdings*, a data

breach case, where the court granted a motion to consolidate various class complaints:

> [T]he Undersigned first finds that there is a substantial threat of
> inconsistent adjudications of common factual and legal issues if
> the cases are allowed to proceed separately. As stated above, all of
> the cases are pled as class actions and all of the cases allege a
> negligence claim. The majority of the cases share other substantive
> claims as well…
> …
> To be sure, the complaints in some of the cases assert claims that
> are not raised in the other related cases. Moreover, the putative
> class definitions vary among the related cases. Consolidation does,
> therefore, carry with it some risk of prejudice and also the
> possibility of confusion based upon these variations. The
> Undersigned finds, nevertheless, that the specific risks of prejudice
> and possible confusion are overborne by the risk of inconsistent
> adjudications of common factual and legal issues. In other words,
> with thirteen separate cases pending, the Undersigned finds that the
> risk of inconsistent adjudications of common factual and legal
> issues far outweighs any specific risks of prejudice and possible
> confusion that may be caused by variations in claims and class
> definitions. Moreover, the nuances in claims and putative class
> definitions can likely be addressed in the consolidated amended
> complaint through the use of putative subclasses once the request
> to appoint interim class counsel has been addressed.

*Kaplan v. 21st Century Oncology Holdings, Inc.*, No. 2:16-cv-210, 2016 WL 9383330, at *2-3

(M.D. Fla. July 21, 2016), *report and recommendation adopted*, No. 2:16-cv-210, 2016 WL

4204781 (M.D. Fla. Aug. 10, 2016) (internal citations omitted). To this end, courts have

recognized that consolidation is appropriate in data breach cases where two or more cases arise from the same occurrence. *See, e.g., Id.*, 2016 WL 9383330, at *2 ("all of the cases appear to arise from the same alleged data breach. Additionally, all of the cases are pled as class actions with class allegations under Fed. R. Civ. P. 23, and all of the cases share at least one similar substantive claim: negligence. Moreover, all cases were filed against a common Defendant"); *In re Rutter's Inc. Data Security Breach Litigation*, No. 1:20-cv-382, ECF No. 12 (M.D Pa. Mar. 26, 2020) (consolidating two data breach class actions), ECF No. 17 (April 3, 2020) (later consolidating two additional actions that were filed into the consolidated action).

In addition, to ensure continued judicial efficiency, the Court should order that any future actions that are filed, transferred, or removed to this Court based on the same or similar facts and circumstances be consolidated with this case. *See, e.g., Gennaro v. Nat'l Rsch. Corp.*, No. 4:17-cv-3152, 2017 WL 5905512, at *2 (D. Neb. Nov. 30, 2017) ("This Order shall apply to this Consolidated Action and any future-filed actions relating to the subject matter of this case."); *In re Rutter's Inc. Data Security Breach Litigation*, ECF No. 12 (consolidating "any future related actions, under the docket number of this, first filed case"), ECF No. 17 ("the Clerk of Court is directed to mark as "Related" and to consolidate with this action all future actions that are filed in, transferred to, or removed to this District that relate to the same data breach at issue in this case").

Finally, Defendants will suffer no prejudice by litigating one consolidated action rather than these 22—or potentially more—separate actions, and as a result, consolidation in the District of Nebraska would therefore benefit of all parties involved.

## B. The Court Should Appoint Interim Co-Lead Class Counsel

### 1. Legal Standard Under <u>Fed. R. Civ. P. 23(g)(3)</u>

<u>Federal Rule of Civil Procedure 23(g)(3)</u> provides "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." <u>Fed. R. Civ. P. 23(g)(3)</u>. The appointment of leadership here is appropriate (*and necessary*) in light of the large number of cases (22) involving overlapping claims and issues, as well as the recent development that mediation is currently being planned. *See Manual for Complex Litigation*, § 21.11 at 246 (4th ed. 2004) ("*Manual*") (when "there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. ***In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during*** precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and ***negotiating settlement***.") (emphasis added).[7] Given the number of lawyers involved in the various District of Nebraska Actions, the Court should appoint Interim Co-Lead Class Counsel, which will clarify the responsibilities among counsel for protecting the interests of the Class, and who will be able to speak with one legitimate, unified voice for all District of Nebraska Actions when negotiating with Defendants whenever mediation occurs.

<u>Federal Rule of Civil Procedure 23(g)(4)</u> mandates that class counsel "must fairly and adequately represent the interests of the class." <u>Fed. R. Civ. P. 23(g)(4)</u>. While, <u>Federal Rule of</u>

---

[7] "[A]ppointment of interim counsel is appropriate here because it will clarify responsibility for protecting the interest of the class during precertification activities and will promote efficient case management." *Duqum v. Scottrade, Inc.*, No. 4:15-cv-1537 (SPM), <u>2016 WL 1700427</u>, at *1 (E.D. Mo. Apr. 28, 2016) (data breach case); *see also Delre v. Perry*, <u>288 F.R.D. 241, 247</u> (E.D.N.Y. 2012) ("In cases…where multiple overlapping and duplicative class actions have been transferred to a single district for the coordination of pretrial proceedings, designation of interim class counsel is encouraged, and indeed is probably essential for efficient case management.") (internal citations and quotations omitted).

Civil Procedure 23(g)(3) provides no criteria for selecting interim counsel, however, Federal Rule of Civil Procedure 23(g)(1)(A), which addresses the appointment of class counsel, provides in appointing class counsel, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i) – (iv). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). "When appointing interim class counsel under Rule 23(g)(3), courts generally look to the same factors used in determining the adequacy of class counsel set forth in Rule 23(g)(1)(A)." *Chen v. Target Corp.*, No. 21-cv-1247 (DWF) (DTS), 2021 WL 6063632, at *2 (D. Minn. Dec. 22, 2021); *see also In re Navistar Maxxforce Engines Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 14-cv-10318, 2015 WL 1216318, at *1 (N.D. Ill. Mar. 5, 2015) ("It is generally accepted that the same considerations that govern the appointment of class counsel once a class is certified govern the designation of interim class counsel before certification."). Thus, the same factors apply here for the Court's analysis.

    As discussed below, each of the relevant Rule 23(g)(1)(A) factors demonstrate that proposed Interim Co-Lead Class Counsel of Lowey/SGT will be able to fairly and adequately represent the interests of the Class in the consolidated action, including at any eventual mediation.

### i.       Lowey/SGT Performed Substantial Work in Investigating this Action

Under the first Rule 23(g)(1)(A) factor, Lowey/SGT have each committed appropriate, yet substantial, time and resources to organizing and working toward the advancement of this litigation, investigating and researching the potential legal theories and claims at issue (including multiple state consumer protection statutes), and researching and reviewing information relating to the factual underpinnings of the Data Breach and this litigation. Lowey/SGT are familiar with the facts and legal issues in this matter and intend to continue their pursuit of the claims on behalf of Plaintiffs and the Class.

Lowey/SGT have already: (1) drafted 3 class action complaints on behalf of 23 plaintiffs for 16 states – collectively the largest representation of plaintiffs from the greatest number of states (*see* Section II, *supra*); (2) initiated, briefed, and argued at the JPML proceedings – which ultimately had the desired catalyst effect of causing all but 1 out of the 23 actions to be filed in, removed to, or transferred to this District; and (3) coordinated with Defense counsel to negotiate extensions for their motion to dismiss, and conferred with Defense counsel regarding the planned mediation with their preferred counsel.

Lowey/SGT continues to perform substantial work that has been (and will be) valuable to the Class as the case moves forward. This includes, but is not limited to: (1) reviewing consumer communications concerning the Data Breach; (2) fielding outreach from impacted Nelnet borrowers and Class Members – as evidence by the recent filing of the *Scott* Action on December 7, 2022; (3) investigating the scope of the Data Breach, and Defendants' public response regarding the same; (4) researching additional potential claims arising from the Data Breach and defenses thereto; and (5) using this research to begin preparing a detailed, Consolidated Complaint.

Lowey/SGT have conducted all of the work necessary to aggressively and efficiently prosecute this litigation thus far, and they stand ready, willing, and able to continue to devote the substantial effort and resources (including the advancement of all necessary costs and expenses, including expert costs) necessary to aggressively litigate the claims on behalf Plaintiffs and the Class, in order to reach the best possible result, not just the quickest.

> ### ii. Lowey/SGT are Knowledgeable and Experienced in Leading and Successfully Resolving Complex Consumer Class Actions, Including Data Breach Litigation

Lowey/SGT more than satisfy the second and third Rule 23(g)(1)(A) factors. Lowey/SGT have the requisite knowledge and experience in Data breach cases, which present unique and novel issues of fact and law that are always evolving. *See, e.g., Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-1415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases… are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts."); *Fulton-Green v. Accolade, Inc.*, No. 18-cv-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."). Because data breach cases require an understanding of the technical issues of data hacking, data privacy measures, and industry standards, appointing interim co-lead class counsel experienced in such complex class action litigation, including data breach litigation and related issues, is in the best interest of the Class. *See, e.g., Outten v. Wilmington Tr. Corp.*, 281 F.R.D. 193, 200 (D. Del. 2012) ("Experience and knowledge of the law is of the utmost importance when determining lead counsel."); *In re Terazosin Hydrochloride Antitrust Litigation*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) ("The

consideration that the Court finds to be most persuasive, however, relates to Co-Lead Counsel's experience in, and knowledge of, the applicable law in this field.").

Here, Lowey/SGT, and their attorneys who will lead the litigation, both have extensive experience leading consumer class actions, including those involving data breach and data privacy issues against large corporate defendants such as Apple, Google, Wawa, Rutter's, Drizly – and have also created and developed significant favorable case law for data breach plaintiffs at the discovery and motion to dismiss stage on key issues, including Article III standing and the discoverability of internal investigative reports regarding the causes of the breach. *See, e.g., Cohen v. Ne. Radiology, P.C.*, No. 20-cv-1202 (VB), 2021 WL 293123, at *2 (S.D.N.Y. Jan. 28, 2021) (finding plaintiff adequately alleged Article III standing; allowed plaintiff's claims for negligence, breach of implied contract, and GBL § 349 to proceed); *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514 (M.D. Pa. 2021) (finding plaintiffs adequately alleged Article III standing; allowed plaintiffs' claims for negligence, breach of implied contract, and unjust enrichment to proceed); *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 1818494 (E.D. Pa. May 6, 2021) (sustaining plaintiffs' claims for negligence and declaratory and injunctive relief to proceed); *In re Rutter's Data Sec. Breach Litig.*, No. 1:20-cv-382, 2021 WL 3733137 (M.D. Pa. July 22, 2021) (compelling production of defendant's forensic investigation report and related communications despite defendant's assertion of work product doctrine and the attorney-client privilege); *In re USAA Data Sec. Litig.*, No. 21-cv-5813 (VB), 2022 WL 3348527 (S.D.N.Y. Aug. 12, 2022) (finding plaintiffs adequately alleged Article III standing; allowed plaintiffs' claims for negligence, negligence *per se*, the federal Driver's Privacy Protection Act ("DPPA"), and injunctive relief to proceed).

Combined Lowey/SGT has approximately 67 attorneys (not including support staff) and have a history of working together. The qualifications and experience of Lowey/SGT are detailed in the accompanying firm resumes attached hereto as Exhibit 1 (Lowey Firm Resume) and Exhibit 2 (SGT Firm Resume).

## Christian Levis – Lowey Dannenberg, P.C.

Christian Levis is a partner in Lowey Dannenberg, P.C.'s New York office and head of the firm's data breach and privacy practice group. An avid computer programmer with experience developing both iOS and Android apps, Mr. Levis is involved in leading the prosecution of several consumer privacy actions against some of the largest technology companies in the world. *See, e.g., Frasco v. Flo Health, Inc., et al.*, No. 3:21-cv-757 (JD) (N.D. Cal.) (class action against Meta and Google, amongst other companies, related to their surreptitious collection of sensitive medical information); *In re Google Assistant Priv. Litig.*, No. 5:19-cv-4286 (N.D. Cal.) (class action on behalf of Google Assistant Enabled Device users whose conversations were obtained by Google, LLC and shared with third parties without users' consent); *Lopez v. Apple, Inc.*, No. 19-cv- 4577 (N.D. Cal.) (class action on behalf of Siri-enabled device users whose conversations were obtained by Apple, Inc. and shared with third parties without users' consent); *Wesch, et al. v. Yodlee*, No 3:20-cv-5991 (N.D. Cal.) (class action on behalf of tens of millions of individuals whose financial data was collected without their consent by one of the largest data aggregators in the United States).

Mr. Levis has also levered his technological experience as lead or co-lead counsel in class actions on behalf of consumers and financial institutions adversely impacted by deficient data security and handling practices. This includes major payment card data breaches. *See, e.g., In re Wawa Data Security Litigation*, No. 19-cv-6019, ECF No. 120 (E.D. Pa.) (appointing Mr. Levis as interim co-lead counsel on behalf of class of financial institutions in data breach compromising

12

tens of millions of individuals personal information); *In re Rutter's Inc. Data Security Breach Litigation*, ECF No. 12 (appointing Mr. Levis interim co-lead counsel on behalf of consumers impacted by data breach at Rutter's gas station and convenience store locations). As well as data breaches involving malware infected mobile apps and websites. *See Barr, et al. v. Drizly, LLC, et al.*, No. 1:20-cv-11492 (D. Mass.) (securing $7.1 million settlement in a data breach action against one of the largest alcohol delivery companies); *Hozza v. PrimoHoagies Franchising, Inc.*, No. 20-cv-4966 (D.N.J.) (representing cardholders impacted by data breach resulting from malware on restaurant chains ordering system).

Beyond just data breach and privacy cases, Mr. Levis has a proven track record of securing extraordinary results for Class members in complex class actions. For instance, Mr. Levis served with two other Lowey attorneys as court-appointed co-lead counsel representing Commonwealth of Pennsylvania Treasurer Joseph Torsella in *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (S.D.N.Y.) ("*GSE Bonds*"), a class action against sixteen of the world's largest banks that allegedly conspired to fix the prices of debt securities issued by government sponsored entities for almost a decade. Operating under an extremely tight litigation schedule, Mr. Levis led the Lowey team responsible for preparing the case for trial. Plaintiff settled the action with Defendants for more than $386 million. Mr. Levis, as well as other Lowey attorneys, received the *American Antitrust Institute* award for Outstanding Antitrust Litigation Achievement in Private Law Practice as recognition for these significant results. Mr. Levis has also been directly involved in achieving similar results in other large, complex class cases, such as:

- *Sullivan v. Barclays plc*, **No. 13-cv-2811 (PKC) (S.D.N.Y.):** Lowey serves co-lead counsel representing CalSTRS in this proposed class action against 12 banks and brokers for the alleged manipulation of the Euro Interbank Offered Rate ("Euribor"). Settlements approved to date bring the total amount recovered for investors in Euribor-based derivatives to more than $491.5 million.

- ***Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD) (S.D.N.Y.):** Lowey is sole lead counsel of this proposed class action alleging that a group of 44 banks and brokers conspired the intentional and systematic manipulation of the Yen LIBOR and the Euroyen TIBOR benchmark, interest rates. To date, the court has granted final approval to $307 million in settlements.

Mr. Levis also manages Lowey's e-discovery infrastructure and has substantial experience in the use of analytics and technology-assisted document review in large class actions. For example, Mr. Levis developed "An Analytics Cookbook for Complex Cases" that was presented at a leading industry conference after this workflow saved the class in *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD) (S.D.N.Y.) an estimated $2.5 million in time and expenses. Mr. Levis leveraged these same techniques in the *GSE Bonds* case, to prioritize the review of more than 9.1 million pages of documents on an extremely tight discovery schedule. These skills are essential in large privacy cases where discovery tends to involve highly technical issues, the depositions of software engineers and other technology professionals, and the review of thousands (if not millions) of documents.

## Steven L. Bloch & Ian W. Sloss – Silver Golub & Teitell LLP

SGT partners Steven L. Bloch and Ian W. Sloss, along with founding partner David S. Golub, helm SGT's class action and complex litigation practice, which represents consumers and investors in data privacy, consumer protection, securities, antitrust, and environmental matters, among others. SGT undertook its first class action in 1983 successfully representing a nationwide class of 40,000 Xerox Corp. pensioners and, in the 1990's served as private lead counsel for the State of Connecticut in its sovereign enforcement action against the American tobacco industry, recovering $3.9 billion for Connecticut, with $370 million coming via special award from a panel of former Attorneys General in recognition of the contribution of Connecticut's SGT-led legal team in helping to achieve the national settlement. *See State of*

*Connecticut v. Philip Morris, Inc., et al.*, No. X02-CV-960148414S. And in, SGT obtained a

$250+ million settlement on behalf of public sector union employees fired in violation of their

First Amendment rights of free speech and association. *See SEBAC v. Rowland*, No. 3:03-cv-221

(D. Conn.).

More recently, SGT achieved extraordinary results on behalf of institutional and

individual investors who were defrauded by Allianz Global Investors U.S. LLC ("AllianzGI")

via knowingly representations made by AllianzGI regarding the risk profile of a complex options

strategy used in a series of investment vehicles, including private hedge funds and publicly-

traded mutual funds. SGT served as court-appointed co-class counsel for the putative private

hedge fund investors in *In re Allianz Global Investors Structured Alpha Litigation*, No. 20-cv-

7154 (S.D.N.Y.). After AllianzGI's motion to dismiss was denied in substantial part, AllianzGI

settled with SGT's clients and other investors on individual bases. SGT then represented

investors in the AllianzGI mutual funds in *Jackson v. Allianz Global Investors*, Index No.

651233/2021 (N.Y.S.), and on November 1, 2022, announced a $145 million settlement on their

behalf. On December 6, 2022, Justice Andrew Borrok preliminarily approved the settlement.

Other representative matters in which Mr. Bloch and Mr. Sloss served or are serving in

leadership roles include:

- ***Spencer v. Hartford Financial Services Group, Inc.*, No. 05-cv-1681 (D. Conn.):** SGT served as court-appointed co-lead counsel and obtained a $72.5 million cash settlement on the eve of trial for two certified subclasses of approximately 22,000 owners of structured settlement annuities in a nationwide class action against Hartford Financial Services Group, Inc and its affiliates.

- ***Underwood et al. v. Coinbase Global, Inc.*, No. 21-cv-8353 (S.D.N.Y.):** SGT has been appointed co-lead counsel on behalf of a putative class of users of the digital asset trading platform operated by Coinbase Global, Inc. ("Coinbase"), alleging that Coinbase has been illegally operating an unlicensed securities exchange. Plaintiffs, on behalf of themselves and the proposed class of digital asset investors, are seeking, *inter alia*, rescissory damages pursuant to the Federal Securities laws. The case is currently pending

15

before Judge Engelmeyer in the Southern District of New York.

- ***Baby Food Contamination Litigation***. SGT is currently serving a leading role prosecuting claims against baby food manufacturers accused of producing baby food tainted with dangerous levels of toxic heavy metals. SGT Partner Steven L. Bloch has been appointed co-lead counsel by the Court in *In re: Beech-Nut Nutrition Company Baby Food Litigation*, No. 1:21-cv-133 (DNH) (CFH) (N.D.N.Y), and was appointed to the plaintiffs' executive committees by the courts in *Wilson, et al. v. Walmart Inc. et al.*, No. 3:21-cv-82 (E.D. Ark.) against Walmart.

- ***In re EpiPen Direct Purchaser Litigation*, No. 20-cv-827 (D. Minn.):** SGT is part of a committee with court-appointed interim co-lead counsel representing direct purchaser plaintiff drug wholesalers Rochester Drug Co-Operative, Inc. ("Rochester Co-op") and Dakota Drug, Inc. ("Dakota Drug") in a proposed class action alleging that brand-name and generic EpiPen manufacturers and a group of pharmacy benefit managers ("PBMs") conspired to maintain supracompetitive prices for brand-name and generic EpiPens.

- ***In re: Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Products Liability Litigation*, No. 21-cv-1230 (W.D. Pa.):** SGT filed the first class action in the United States arising out of Philips' recall of CPAP, BiPAP, and mechanical ventilator devices due to the presence of a dangerous PE-PUR Foam that could cause users to suffer adverse health effects. SGT Partner Ian W. Sloss currently serves in a court-appointed leadership committee role in the MDL pending in the Western District of Pennsylvania.

These examples ultimately demonstrate that Lowey and SGT, and their attorneys, are both well-qualified to serve as Interim Co-Lead Class Counsel in the consolidated action.

### iii.   Lowey/SGT are Committed to Devoting Significant Resources to Representing and Advancing the Interests of the Class

As to the fourth, Rule 23(g)(1)(A) factor, Lowey/SGT are ready, willing, and able to expend the necessary resources to ensure the vigorous prosecution of the claims asserted by the Plaintiffs in these cases. Far from a fly by night operation or 'new kid on the block,' both firms are well capitalized and have existed in their current firm structure for decades, with minimal attorney departures. Lowey/SGT have years of experience prosecuting and self-funding complex class action litigation, including actions against some of the largest companies in the world. Each firm has advanced millions of dollars to fund expenses in several of its cases, demonstrating a commitment to providing the resources and staffing needed to successfully prosecute class

actions. Lowey/SGT are also willing to advance all costs to prosecute this action and see it through completion, including advancing costs for document hosting, expert witnesses (both for liability and damages if necessary), and for trial.

Their resumes demonstrate their lengthy records of success leading complex class action cases. The experience here will be no different. In sum, Lowey/SGT are committed to pursuing the best interests of Plaintiffs and the Class in an efficient manner. They understand the time and resources necessary to pursue this action to a successful resolution. Their firms have already made significant investments of resources and time into the prosecution of these claims.

Lowey also brings its state-of-the-art in-house e-discovery infrastructure and proprietary algorithms to help speed up discovery and save the class time and money. An ISO 27001 certified law firm, Lowey maintains the unique capability to conduct end-to-end e-discovery completely in-house on its own secure discovery environment, a capability it developed and applied in numerous complex cases involving millions of documents, including most recently the *In re Google Assistant* privacy class action.[8] Lowey/SGT's ability to securely conduct discovery in-house is especially useful in a case of this nature, where the data at issue is particularly sensitive. Their firms possess the resources needed to prosecute this case to a successful resolution and will do so here.

> ### iv.   Other Matters Pertinent to Lowey/SGT's Ability to Fairly and Adequately Represent the Interests of the Class

> #### a.   Lowey/SGT Propose a Lean, Inclusive Structure

The Court may also consider "any other matter pertinent to counsel's ability to fairly and

---

[8] This technology has resulted in significant cost-savings. For example, in *Sullivan v. Barclays plc*, Lowey litigated Sherman Act claims against eight multi-national banks on behalf of a class of investors for five years and requested only $155,362.11 in discovery-related expenses from a $491 million settlement. *See Sullivan v. Barclays plc*, No. 13-cv-2811 (PKC), ECF Nos. 411, 483 (S.D.N.Y.); *see also GSE Bonds*, No. 19-cv-1704 (JSR), ECF No. 159 (S.D.N.Y.) ("Lowey Dannenberg represents that it maintains its own e-discovery infrastructure. Again, this is not a dispositive factor, but it weighs slightly in []Lowey's favor.").

adequately represent the interests of the class." <u>Fed. R. Civ. P. 23(g)(1)(B)</u>. Lowey/SGT propose

a lean, inclusive structure—comprised of just 2 law firms—that avoids the "repeat player

dynamic" often seen in large class actions, while simultaneously putting forth highly skilled

attorneys with significant experience and the resources necessary to vigorously litigate the

actions. *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices For Large*

*and Mass-Tort MDLs*, at 37, 46 (2d ed., Sept. 2018) ("[T]he strong repeat player dynamic that

has historically existed reduces fresh outlooks and innovative ideas, and increases pressure to go

along with the group and conform, all of which may negatively impact the plaintiffs whose cases

are being pursued…Research shows that having a mix of experienced and new players enhances

creativity and innovation, leads to better decision making and problem solving, and promotes

discussion of novel concepts raised by those who historically have not been in leadership").[9]

Leadership roles should be made available to *newer lawyers*, *In re Robinhood Outage Litig.*, No.

20-cv-1626 (JD), <u>2020 WL 7330596</u>, at *2 (N.D. Cal. July 14, 2020), including  attorneys like

Mr. Levis and Mr. Sloss who are both under 40 years of age.

### b.  Lowey/SGT Will Promote Efficiency and Expedite the Litigation

Often the greatest challenge in appointing a leadership structure is appointing counsel

who will work cooperatively and collaboratively. For example, prior to working at SGT, Mr.

Sloss used to work at Lowey, where he often worked with Mr. Levis and the rest of the Lowey

team. Lowey/SGT will work aggressively to secure a just, speedy, and inexpensive

determination in this action, all in the interest of achieving the best possible outcome for all

Plaintiffs and the Class.

---

[9] *Available at* https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1004&context=bolch.

Lowey/SGT are confident they will be able to implement strategies to ensure the efficient and economical litigation of this matter. Lowey/SGT will recommend the use of proven methodologies from prior cases to monitor billing, control costs, review assignments, and avoid duplication of efforts of Plaintiffs' counsel. Both firms would be required to maintain contemporaneous timekeeping records recorded in one-tenths of an hour and report detailed monthly timekeeping records for review by the leadership structure. All block-billing will be prohibited and strictly enforced. Additionally, Lowey/SGT will also appropriately staff this action and communicate effectively to ensure that multiple attorneys and/or firms are not performing duplicative or unnecessary work. With the Court's approval, Lowey/SGT will also encourage the use of Zoom and other videoconferencing options for hearings and depositions. Such applications have been used successfully during the COVID-19 pandemic and the continued use of remote meetings, when feasible, will be an invaluable cost-saving measure.

Additionally, Lowey/SGT urge the Court to avoid appointing and oversized executive or steering committee and guarantee the consolidated action will only be litigated by the firms of the Court's choosing to efficiently litigate on the Class's behalf. *See Manual* §10.221 (explaining "[c]ommittees of counsel . . . sometimes lead to substantially increases costs, and . . . should try to avoid unnecessary duplication of effort and control fees and expenses."). All too often in data breach cases of this size, in order to garner support for a lead interim class counsel application, attorneys agree to bloated, oversized executive or steering committees, that come with the implicit promise of work to those supporting firms, which results in duplicative and unnecessary work product, unnecessary billing, and inflated lodestars. Ultimately, these inefficient structures disadvantage the Class in favor of creating unnecessary leadership positions that can hamstring interim class counsel who are forced to prioritize doling out assignments to fulfill promises over

what is best for the litigation. Lowey/SGT have not promised any work or position to any other counsel—the consolidated action will be litigated *only* by the Lowey/SGT attorneys at their respective firms.

Finally, Lowey/SGT have access to state-of-the-art in-house e-discovery infrastructure and top-notch data security—essential resources in safeguarding sensitive data in a data breach case. Lowey/SGT's combined talent, resources, and diverse perspectives will undoubtably ensure the most efficient and economical prosecution of the case.

### C. The Court Should Set a Briefing Schedule for Filing and Responding to a Consolidated Complaint

Plaintiffs propose an expeditious and efficient briefing schedule for the consolidated action. Plaintiffs propose filing a Consolidated Complaint within thirty (30) days from the consolidation order. Defendants will then have thirty (30) days from the date on which Plaintiffs file their Consolidated Complaint to file a response thereto. In the event that Defendants' response is a motion to dismiss, Plaintiffs will have twenty-one (21) days to file their opposition brief, and Defendants will have fifteen (15) days to file their reply brief.[10]

### IV.    CONCLUSION

Based upon the foregoing, Plaintiffs respectfully ask the Court to grant their motion and enter an Order: (1) consolidating the aforementioned District of Nebraska Actions; (2) appointing Lowey Dannenberg, P.C. and Silver Golub & Teitell LLP as Interim Co-Lead Class Counsel; and (3) setting a briefing schedule for filing a Consolidated Complaint and motions to dismiss.

---

[10] *See Rutter's Inc. Data Security Breach Litigation*, ECF No. 12 (order consolidating data breach action and ordering plaintiffs to file an operative, consolidated amended complaint within sixty (60) days of the consolidation order; defendants to have thirty (30) days to file a response thereto; where defendants' response is a motion to dismiss, plaintiffs to have thirty (30) days to file their opposition brief; and defendants to have twenty-one (21) days to file a reply brief).

Dated: December 13, 2022

Respectfully submitted,

*/s/ Joel M. Carney*
Joel M. Carney, #21922
Jeana L. Goosmann, #22545
Joseph V. Messineo, #21981
**GOOSMANN LAW FIRM, PLC**
17838 Burke Street, Ste. 250
Omaha, NE 68118
Telephone: (402) 280-7648
carneyj@goosmannlaw.com
goosmannj@goosmannlaw.com
messineoj@goosmannlaw.com

Steven L. Bloch
Ian W. Sloss
Zachary Rynar
**SILVER GOLUB & TEITELL LLP**
One Landmark Square
Fifteenth Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Fax: (203) 325-3769
sbloch@sgtlaw.com
isloss@sgtlaw.com
zrynar@sgtlaw.com

Christian Levis
Johnathan Seredynski
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
jseredynski@lowey.com

Anthony M. Christina
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Fax: (914) 997-0035
achristina@lowey.com

*Counsel for Plaintiffs William Spearman, Brittni Linn, Jessica Alexander, Christopher Sangmeister, Taylor Vetter, Nichole Allocca, Kayli Lazard, Bridget Cahill, Pamela Bump, Melissa Charbonneau, Douglas Conley, Noah Helvey, Dallin Iler, Dustin Jones, Devinne Peterson, Justin Randall, Sofia Rodriguez, Rachel Woods, Ian Scott, Lesly Canales, Eric Polanco, Joshua Sanchez, and Delilah Oliveira*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(d)(3)</u>

Undersigned counsel for Plaintiffs hereby certifies that this memorandum of law (the "Brief") complies with the word-count limit described of Local Civil Rule 7.1(d)(1)(A). Undersigned relied on the word count feature of the word-processing system, Microsoft Word, Version 2018, used to prepare the Brief. The actual number of words in the Brief, including all text (the caption, body, headings, footnotes, and quotations), is 8,169 words.

I declare pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

*/s/ Joel M. Carney*_____
Joel M. Carney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2022, a copy of this memorandum of law was filed electronically with the United States District Court for the District of Nebraska and served on all counsel of record through the CM/ECF system.

*/s/ Joel M. Carney*_____
Joel M. Carney
